# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Charles P. Kocoras | Sitting Judge if Other than Assigned Judge | Morton Denlow |
|---|---|---|---|
| **CASE NUMBER** | 01 C 4032 | **DATE** | 4/18/2002 |
| **CASE TITLE** | Eagle Compressors, Inc. vs. HEC Liquidating Corp., et al. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)   ☐ General Rule 21   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).
(10) ■ [Other docket entry]  Enter Memorandum Opinion and Order. Plaintiff's motion to compel Defendant's production of its attorney's letter [11-1] is granted.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | Document Number |
|---|---|---|---|---|
| | No notices required, advised in open court. | | | |
| | No notices required. | | number of notices | |
| ✓ | Notices mailed by judge's staff. | | APR 19 2002 | |
| | Notified counsel by telephone. | | date docketed | 20 |
| | Docketing to mail notices. | | 15 | |
| | Mail AO 450 form. | U.S. DISTRICT COURT | docketing deputy initials | |
| ✓ | Copy to judge/magistrate judge. | | 4/17/2002 | |
| DK | courtroom deputy's initials | 02 MAY 10 PM 4:09 | date mailed notice DK | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

EAGLE COMPRESSORS, INC., )
an Illinois Corporation f/k/a )
EMERGENCY PRODUCTS, INC., )
)
Plaintiff, )
) No. 01 C 4032
)
v. ) Magistrate Judge Morton Denlow
)
HEC LIQUIDATING CORP., )
a Delaware Corporation, f/k/a )
EAGLE COMPRESSORS, INC., )
HAMWORTHY BELLISS & )
MORCOM LTD., a United Kingdom )
Corporation, )
)
Defendants. )

DOCKETED
APR 1 9 2002

## MEMORANDUM OPINION AND ORDER

This case presents the issue of whether defense attorney's confidential letter to his client analyzing Plaintiff's claims and threatened litigation is protected from discovery after it has been shown by Defendant to Plaintiff during a client settlement meeting. For the reasons stated herein, Defendant has waived both the attorney-client privilege and work product doctrine and the Court grants Plaintiff's motion to compel.

### I. BACKGROUND FACTS

On January 29, 1999, Hamworthy Belliss and Morcom Ltd., ("Hamworthy" or "Defendant"), located in Gloucester England, sold the assets of its compressors division, Eagle Compressors Inc., to Emergency Products, Inc., which later changed its name to Eagle

Compressors, Inc. ("Plaintiff"). (Cahill Decl. ¶ 1-2).

On October 30, 2000, Plaintiff's counsel sent Defendant's attorney a letter asserting claims for the defective products and encouraged Defendant to proceed with good faith settlement negotiations. (Cahill Decl. ¶ 3 and Ex. A). In April 2001, Defendant's Managing Director, John Cahill ("Cahill"), met with Plaintiff's President, Peter Nielsen ("Nielsen") in Bristol, England for a two hour meeting. The purpose of the meeting was to discuss a retro fit program to modify and strengthen the design specifications which were sold to Plaintiff as part of the asset sale. (Cahill Decl. ¶ 4). During the meeting, the parties discussed the recall/retro fit program and approximately 30 to 45 minutes was spent discussing the possibility of settling the claim for defective products. (*Id.* at ¶¶ 4-5). During the settlement discussion, Cahill showed Nielsen a thirteen page, single spaced, confidential legal opinion letter ("the letter") prepared by Defendant's attorney. (*Id.*). Cahill allowed Nielsen to read the letter for approximately 5 to 10 minutes and took the letter back. (*Id.*). Defendant's attorney had prepared the letter on February 6, 2001, in which he analyzed Plaintiff's claims, various documents relating to the anticipation of litigation and gave an opinion on the merits of the claims. The letter was marked "CONFIDENTIAL, ATTORNEY-CLIENT PRIVILEGE."[1]

---

[1] A copy of the letter has been provided to the Court for its *in camera* review.

In addition, the letter was provided to Gardner Denver, Inc. in early 2001 as part of Gardner Denver's purchase of Defendant. Gardner Denver now owns Defendant. (Cahill Decl. ¶ 7). No other person outside of Hamworthy's corporate affiliates was shown the letter. *Id.*

Plaintiff now seeks to compel the production of the letter claiming the two disclosures constituted a waiver of both the attorney-client privilege and the work product doctrine. Defendant claims the protection was not waived by disclosure in a settlement meeting or as part of an acquisition. Oral argument was held on March 27, 2002. The Court will examine whether the letter is protected under either the attorney-client privilege or the work product doctrine.

## II. DEFENDANT WAIVED ITS PROTECTION UNDER THE ATTORNEY-CLIENT PRIVILEGE AND WORK PRODUCT DOCTRINE

### A. Attorney-Client Privilege

#### 1. The Letter is an Attorney-Client Privilege Communication

The Seventh Circuit applies the general principles of attorney-client privilege as outlined by Wigmore:

> (1) Where legal advice of any kind is sought (2) from a professional legal advisor in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal adviser, (8) except the protection be waived.

*United States v. White*, 950 F.2d 426, 430 (7th Cir. 1991). The party seeking to invoke the privilege bears the burden to establish all of the essential elements. *Id.* Since the letter

3

contained confidential legal advice between Defendant and its attorney regarding Plaintiff's claims, the attorney-client privilege attaches to the letter.

## 2. The Attorney-Client Privilege Was Waived

The attorney-client privilege is based on a principle of confidentiality in order to enable attorneys to properly advise their clients. The purpose of the privilege is "to encourage clients to make full disclosure to their attorneys." *Upjohn v. United States*, 449 U.S. 383, 389 (1981). The attorney-client privilege reinforces the concept of trust necessary between a lawyer and client.

The general rule is "[a]ny voluntary disclosure by the holder of the attorney-client privilege is inconsistent with the attorney-client confidential relationship and thus waives the privilege." *Powers v. CTA*, 890 F.2d 1355, 1359 (7th Cir. 1989); *Blanchard v. EdgeMark Financial Corp.*, 192 F.R.D. 233, 236 (N.D.Ill. 2000). The client is the holder of the attorney-client privilege and once a client discloses confidences to a third party, the privilege is deemed waived. *Nye v. Sage Products Inc.*, 98 F.R.D. 452, 453 (N.D.Ill. 1982) (holding the clients waived the attorney-client privilege when they produced documents and answered interrogatories, but opinion work product was protected from disclosure). *See also, Urban Outfitters v. DPIC Companies, Inc.*, 203 F.R.D. 376, 380 (N.D.Ill. 2001) (holding the client waived the attorney-client privilege when she faxed the documents to opposing counsel).

In this case, Cahill waived the attorney-client privilege during the meeting in April 2001, because he voluntarily disclosed the letter to Nielsen, Plaintiff's President. *In re*

4

*Subpoena Duces Tecum*, 738 F.2d 1367, 1370 (D.C. Cir. 1984) (client willingly sacrificed its attorney-client confidentiality by voluntarily disclosing material in an effort to convince SEC not to bring a formal investigation). *See also*, cases collected at Edna Selan Epstein, The Attorney-Client Privilege and the Work-Product Doctrine 292-96 (American Bar Association 4th ed. 2001) [hereinafter Epstein].

### B. Work Product Doctrine

#### 1. Policies Underlying the Work Product Doctrine

The work product doctrine, announced in *Hickman v. Taylor*, 329 U.S. 495 (1947), protects otherwise discoverable documents and tangibles, and was subsequently codified as Rule 26(b)(3) of the Federal Rules of Civil Procedure. *Caremark, Inc. v. Affiliated Computer Services, Inc.*, 195 F.R.D. 610, 612 (N.D. Ill. 2000). Rule 26(b)(3) provides:

> [A] party may obtain discovery of documents and tangible things otherwise discoverable under subdivision (b)(1) of the rule and prepared in anticipation of litigation or for trial by or for another party or by or for that other party's representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent) only upon a showing that the party seeking discovery has substantial need of the materials in the preparation of the party's case and that the party is unable without undue hardship to obtain the substantial equivalent of the materials by other means. In ordering discovery of such materials when the required showing has been made, the court shall protect against disclosure of the mental impressions, conclusions, opinions or legal theories of an attorney or other representative of a party concerning the litigation.

Factual information may not be withheld under the work product doctrine, but must be produced through interrogatories, depositions or other discovery. *Allen v. Chicago Transit Authority*, 198 F.R.D. 495, 500 (N.D.Ill. 2001).

The work product doctrine exists because "it is essential that a lawyer work with a certain degree of privacy, free from unnecessary intrusion by opposing parties and their counsel." *Hickman,* 329 U.S. at 510. *See also, Upjohn v. United States,* 449 U.S. 383, 400 (1981) (commenting on the danger of disclosing an attorney's mental processes). As announced in *Hickman,* if work product was discoverable upon mere demand, "much of what is now put down in writing would remain unwritten." 329 U.S. at 511. Further, disclosure of an attorney's efforts during pretrial discovery "could disrupt the orderly development and presentation of his case." *United States v. Nobles,* 422 U.S. 225, 239 (1975). A trial attorney should be able to "prepare his legal theories and plan his strategy without undue and needless interference." *Hickman,* 329 U.S. at 511. If such work product was discoverable upon mere demand, "inefficiency, unfairness, and sharp practices would inevitably develop," thereby having a "demoralizing" effect on the legal profession. *Id.* Therefore, opinion work product as noted by the Supreme Court in *Upjohn,* deserves "special protection." 449 U.S. at 400.

Federal Rule of Civil Procedure 26(b)(3) divides work product into two categories: "opinion" work product and "fact" work product. *Caremark,* 195 F.R.D. at 616. If the document is fact work product, then the party seeking discovery must demonstrate a substantial need for the material and an inability to obtain the substantial equivalent of the information without undue hardship. *Id.* This burden is difficult to meet and is satisfied only in "rare situations, such as those involving witness unavailability." *Trustmark Insurance Co. v. General & Cologne Life Re of America,* 2000 WL 1898518 * 3 (N.D.Ill. 2000).

With respect to opinion work product, "the court shall protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of an attorney." Fed. R. Civ.P. 26(b)(3). In *Trustmark*, the court explained opinion work product is protected even when undue hardship exists and therefore, is for "all intents and purposes absolute." 2000 WL 1898518 at 3. *See also, Vardon Golf Company, Inc., v. BBMG Golf LTD.,* 156 F.R.D. 641, 646-47 (N.D.Ill. 1994) (denying motion to compel because documents constituted opinion work product and were absolutely privileged from discovery).

### 2. The Letter is Opinion Work Product

The letter is classic opinion work product because it contains an attorney's mental impressions, conclusions, opinions and legal theories pertaining to Plaintiff's claims against Defendant. The underlying facts contained in the letter are discoverable pursuant to ordinary discovery process such as interrogatories, document requests and depositions. Plaintiff has not shown or argued that it has a substantial need for the facts contained in the letter, nor that the facts are not discoverable by other means. If Plaintiff were allowed to discover the letter, defense attorney's mental processes would be exposed to Plaintiff, thereby allowing Plaintiff to enjoy a tactical advantage over Defendant. Therefore, because the letter contains an attorney's mental impressions regarding the case, it is opinion work product and would ordinarily be protected from discovery.

### 3. Defendant Waived the Work Product Protection

Plaintiff claims Defendant waived the work product doctrine because disclosure of the letter was inconsistent with the maintenance of secrecy from a disclosing party's adversary. Defendant asserts that although an arguable waiver of the attorney-client privilege occurred, it did not constitute a waiver of the attorney work product doctrine.

The waiver of the attorney-client privilege does not automatically waive work product protection for the same document, as the two are independent and grounded on different policies. Epstein at 608. Waiver of attorney-client privilege and waiver of work product require separate analysis because they reflect different policies. *Id.* The attorney-client privilege is designed to protect the client and the client can waive the privilege. On the other hand, the work-product doctrine protects the attorney's work and mental impressions from adversaries and third parties. *Id.* "While the attorney-client privilege is often treated as waived by any voluntary disclosure, only disclosures that are 'inconsistent with the adversary system' are deemed to waive work-product protection." *Id.* at 610.

The voluntary disclosure of attorney work product to an adversary waives work product protection. *See Id.* at 610-12 (cases collected). "Because the protection is designed to protect an attorney's trial preparation and mental processes from discovery at the behest of an adversary, clearly voluntary disclosure to an adversary would almost invariably be seen as a total waiver." *Id.* at 613. For example, in *United States v. Nobles*, the Supreme Court held a party waived work product protection by presenting an investigator as a trial witness.

422 U.S. at 239-40. The protected materials were waived with respect to matters covered in his testimony. *Id.* "What constitutes a waiver with respect to work-product materials depends, of course, upon the circumstances." *Id.* at 240, n.14.

In *Salomon Brothers Treasury Litigation v. Steinhardt Partners, L.P.*, 9 F.3d 230 (2nd Cir. 1993), the court found the work product doctrine had been waived with respect to a document which defendant had voluntarily produced to the SEC in the hope of preventing a formal enforcement proceeding. The document was sought by plaintiffs who had filed a civil class action relating to the subject matter of the SEC investigation. The Second Circuit agreed with the district court's conclusion that voluntary disclosure of the document to an adversary waived the protection in a subsequent civil suit, explaining, "once a party allows an adversary to share the otherwise privileged thought processes of counsel, the need for the privilege disappears." *Id.* at 235.

Courts have found the voluntary disclosure of work product in settlement negotiations waives the work product protection. *See* e.g., In *re Chrysler Motors Corporation Overnight Evaluation Program Litigation*, 860 F.2d 844, 846-47 (8th Cir. 1988) (holding Chrysler waived work product protection by voluntarily disclosing the computer tape to the class action plaintiffs during the due diligence phase of settlement negotiations); *Grumman Aerospace Corporation v. Titanium Metals Corporation of America*, 91 F.R.D. 84, 90 (E.D. N.Y. 1984) (finding "disclosure to an adversary waives the work product protection as to items actually disclosed, even where disclosure occurs in settlement.")

While this result may seem harsh, it is consistent with the policies underlying the work product doctrine.[2] The doctrine enables a lawyer to analyze a case for his client's benefit. However, where as here, the client chooses to reveal the information as part of its settlement strategy, Defendant sought to have Plaintiff comprehend the rationale put forward by the attorney. Although the settlement negotiations failed, Defendant intended to impart its attorney's mental impressions and conclusions for the purpose of advancing its settlement posture. It is now too late to put the genie back into the bottle.

Defendant's decision to disclose its attorney's work product was obviously motivated by self-interest, not inadvertence. The document was clearly marked "CONFIDENTIAL, ATTORNEY-CLIENT PRIVILEGE." Defendant expected to reap the benefits of the disclosure to Plaintiff's President in the form of a favorable settlement.

Defendant did not have any expectation of confidentiality after making the disclosure. Although the document was retrieved, Defendant used the letter to convince Plaintiff of the weakness of its claim in the hope of driving down the settlement demand. If Defendant had been successful, we would not be here now. Having been unsuccessful, Defendant cannot cry foul. As the court stated in *Permian Corp. v. United States*, 665 F.2d 1214, 1221 (D.C. Cir. 1981):

---

[2]The disclosure of the letter to Gardner Denver as part of its acquisition of Defendant did not constitute a waiver because Gardner Denver was not an adversary in the prospective litigation. *United States v. Gulf Oil Corp.*, 760 F.2d 292, 296 (Temp. Emer. Ct. App. 1985) (work product protection not waived where documents disclosed in the course of merger discussions).

10

> The client cannot be permitted to pick and choose among his opponents, waiving the privilege for some and resurrecting the claim of confidentiality to obstruct others, or to invoke the privilege as to communications whose confidentiality he has already compromised for his own benefit ... The attorney-client privilege is not designed for such tactical employment.

The same can be said for the work product doctrine. Having chosen to voluntarily disclose his attorney's work product, Defendant must live with the consequences.

### III. CONCLUSION

**Plaintiff's Motion to Compel Defendant's production of its attorney's letter is granted** because the protection afforded to the letter under the attorney-client privilege and work product doctrine was waived by Defendant's voluntary disclosure to Plaintiff.

**SO ORDERED THIS 18th DAY OF APRIL, 2002.**

_____
**MORTON DENLOW**
United States Magistrate Judge

**Copies mailed or delivered in open court to:**

| | |
|---|---|
| Gerald Haberkorn | Donald G. Mulack |
| Mark Smith | Micah E. Marcus |
| Linda E. Lu | McBride Baker & Coles |
| Lowis & Gellen | 500 West Madison Street |
| 200 West Adams Street | 40th Floor |
| Chicago, Illinois 60606 | Chicago, Illinois 60661 |
| Attorneys for Plaintiff | Attorneys for Defendant |