# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Charles P. Kocoras | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 01 C 4032 | **DATE** | 2/28/2003 |
| **CASE TITLE** | Eagle Compressors, Inc. vs. HEC Liquidating Corp et al | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ■ Status hearing set for 3/25/2003 at 9:30 A.M..
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m) ☐ Local Rule 41.1 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] **ENTER MEMORANDUM OPINION:** We grant Defendants' motion (Doc 49-1) to strike, grant in part and deny in part Plaintiff's motion (Doc 56-1) to strike, and deny Defendants' motion (Doc 28-1) for summary judgment.

(11) ■ [For further detail see order attached to the original minute order.]

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

DOCKETED
MAR 0 3 2003

| | |
|---|---|
| EAGLE COMPRESSORS, INC., an Illinois corporation f/k/a Emergency Products, Inc., <br><br> Plaintiff, <br><br> vs. <br><br> HEC LIQUIDATING CORP., a Delaware corporation f/k/a Eagle Compressors, Inc.; HAMWORTHY BELLISS & MORCOM LTD., a United Kingdom corporation; and ARTHUR ANDERSEN, L.L.P., a North Carolina limited liability partnership, <br><br> Defendants. | 01 C 4032 |

**MEMORANDUM OPINION**

CHARLES P. KOCORAS, Chief District Judge:

This matter comes before the court on motions to strike brought by both sides and a motion for summary judgment brought by Defendants HEC Liquidating Corporation, formerly known as Eagle Compressors, Inc. ("HEC") and Hamworthy Belliss & Morcom Ltd. ("Hamworthy"). For the reasons set forth below, we grant Defendants' motion to strike, grant in part and deny in part Plaintiff's motion to strike, and deny Defendants' motion for summary judgment.

## BACKGROUND

Plaintiff Eagle Compressors, Inc., formerly known as Emergency Products, Inc. ("Eagle"), purchased HEC's business of manufacturing, selling, servicing, repairing, and maintaining breathing air compressor products for $2,152,949. The parties executed an Asset Purchase Agreement (the "Contract") on January 23, 1999. After the Contract was executed, a competitor company discovered (and brought to Eagle's attention) that certain products Eagle was manufacturing as a continuation of the HEC business were defective. Specifically, the products at issue are containment fill stations. Containment fill stations fill self-contained breathing apparatus ("SCBA") and self-contained underwater breathing apparatus ("SCUBA") cylinders with compressed air. In the event that a SCBA or SCUBA cylinder ruptures and explodes under the tremendous pressure they normally can withstand, a containment fill station is supposed to safely contain the explosion. After executing the Contract, it became apparent to all parties that some of the fill station product lines Eagle purchased from HEC were defective with respect to containing cylinder explosions. Consequently, Eagle brought this action against HEC and its parent corporation, Hamworthy, for fraudulent misrepresentation, fraudulent concealment, and breach of contract. HEC and Hamworthy move for summary judgment on the fraud claims.

## MOTIONS TO STRIKE

### I. Defendants' Motion to Strike

The enforcement of our local rules governing summary judgment is committed to the discretion of this court. *Metropolitan Life Ins. v. Johnson*, 297 F.3d 558, 562 (7th Cir. 2002). In connection with the pending motion for summary judgment, HEC and Hamworthy submitted a Local Rule 56.1(a) Statement of Material Facts ("Def. Stmt. of Facts"). Local Rule 56.1(a) requires the factual statements to be supported in the record by admissible evidence. *Stinnett v. Iron Works Gym/Executive Health SPA, Inc.*, 301 F.3d 610, 613 (7th Cir. 2002); *Malec v. Sanford*, 191 F.R.D. 581, 585 (N.D. Ill. 2000). Eagle denied twelve of the factual statements therein based on its assertion that the evidence relied upon was inadmissible. Eagle argues that such evidence is inadmissible because the corresponding witnesses are rendered incompetent under 735 ILCS 5/8-301. *See* FED. R. EVID. 601 (with respect to state causes of action, "the competency of a witness shall be determined in accordance with State law").

As stated above, Eagle summarily denied (without supporting evidence) twelve of Defendants' statements of fact. (Pl. Resp. to Def. Stmt. of Facts ¶¶ 18-22, 26, 28-30, 40, 45, and 46.) Eagle's original stated reason for its denials was that the assertions contained in those twelve paragraphs relied on inadmissible evidence barred by the Illinois Dead-Man's Act, 735 ILCS 5/8-201. HEC and Hamworthy move to strike

Eagle's responses to the twelve statements and have them deemed admitted because the Dead-Man's Act clearly does not apply in this case since no party to the action is a representative of the deceased Howard Liebovitz (Eagle's former president). In partially resisting the motion (only as to paragraphs 18-21, 28, 29, and 40), Eagle explains that the citation to the Dead-Man's Act was inadvertent and that it meant to cite to 735 ILCS 5/8-301 (similar to the Dead-Man's Act but applying in cases where the deceased was an agent of a party). Although it claims the citation to the Dead-Man's Act was inadvertent, Eagle fails to explain why it ever, under either statute, denied paragraphs 22, 26, 30, 45, and 46. In fact, Eagle states that it denied all twelve paragraphs "because *most* of those paragraphs purported to offer evidence concerning the substance of 1998 conversations between Defendants' corporate agents, all of whom are still alive and Plaintiff's former president, Howard Liebovitz, who is deceased." (Pl. Resp. ¶ 2 (emphasis added).) Eagle's position is egregiously inappropriate. By its own admission, Eagle has denied at least one of the twelve paragraphs for no good faith reason whatsoever. Moreover, looking at the merits of Eagle's denials, it appears that several, and not just one, of the denials are wholly inappropriate. For instance, Eagle denied six paragraphs (paragraphs 18-22, 26, and 30) despite that all of the evidence in support of those paragraphs came from Eagle's own agents, and not from an adverse party. *See* 735 ILCS 5/8-301 (clearly barring only

evidence of a deceased agent's conversations presented by an adverse party). Additionally, Eagle denied part of paragraph 29 relating to a meeting attended by the now deceased Liebovitz but also attended by two additional agents of Eagle. *See* 735 ILCS 5/8-301 (clearly barring only evidence of a deceased agent's conversations when no other surviving agent of same party was present). Although we have only specifically found deficiencies in seven of Eagle's twelve denials, we may grant the motion to strike in its entirety:

> [W]e have emphasized the importance of local rules and 'have consistently and repeatedly upheld a district court's discretion to require strict compliance with its local rules governing summary judgment.' *Bordelon v. Chicago Sch. Reform Bd. of Trustees*, 233 F.3d 524, 527 (7th Cir.2000) (upholding the district court's decision to strike response in its entirety rather than selectively due to failure to comply with local rules).

*Metropolitan Life Ins.*, 297 F.3d at 562. Def. Stmt. of Facts paragraphs 18-22, 26, 28-30, 40, 45, and 46 are deemed admitted.

## II. Plaintiff's Motion to Strike

Eagle moves to strike four of Defendants's responses to its 56.1(b)(3)(B) Statement of Material Facts ("Pl. Stmt. of Facts"). In paragraphs 101 and 102, Eagle asserted that Defendants made certain admissions and cited to the depositions of two former employees of HEC for support. Defendants denied the paragraphs stating that it was not bound by John Cahill's or Derreck Holmes's deposition testimony. Whether

or not Defendants are, technically speaking, bound by Cahill's and Holmes's testimony is not relevant to the summary judgment motion. In their summary judgment motion, Defendants must show that there is no genuine issue of disputed material fact. *Bay v. Cassens Transport Co.*, 212 F.3d 969, 972 (7th Cir. 2000). Thus, assuming the content of paragraphs 101 and 102 are material in the first place, all Eagle needs to show is that there is, at the least, a disputed issue. The testimony of Holmes and Cahill is sufficient to show just that.

In paragraphs 84 and 85, Eagle asserted that its expert, Robert Weir, stated certain opinions, the substance of which is unimportant to the motion to strike. (Pl. Stmt. of Facts ¶¶ 84 and 85.) Defendants, disagreeing with the expert's opinions, denied that the expert even made the opinions. (Def. Resp. to Pl. Stmt. of Facts ¶¶ 84 and 85.) For example, in paragraph 85, Eagle asserted:

> Plaintiff's mechanical engineering expert, Robert Weir, concluded that the failures during the modified Cadet fill station testing "should have prompted an urgent and immediate review of its use in the Cadet product line."

(Pl. Stmt. of Facts ¶ 85.) Defendants responded:

> Deny. The unsupported opinion is not based upon any test conducted by Plaintiff's expert.

(Def. Resp. to Pl. Stmt. of Facts ¶ 85.) All Eagle asserted was that Mr. Weir "concluded" a certain opinion. Since Defendants have no support in the record for

their position that Mr. Weir did not so conclude, Defendants' responses to paragraphs 84 and 85 are stricken. The corresponding statements are deemed admitted.

It is unfortunate that so much client and judicial resources are being consumed to resolve an issue involving a straightforward rule (Local Rule 56.1) that is designed to isolate and narrow issues for efficient adjudication of summary judgment motions. It should be further noted that our granting of the motion with respect to paragraphs 84 and 85 in no way condones Eagle's use of those paragraphs to indirectly assert its expert's opinion rather than simply including an affidavit of Mr. Weir as provided for in Local Rule 56.1(a)(1).

We grant the motion with respect to paragraphs 84 and 85 and deny it with respect to paragraphs 101 and 102.

## SUMMARY JUDGMENT

Summary judgment is appropriate when the record, viewed in the light most favorable to the nonmoving party, reveals that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *Bay*, 212 F.3d at 97. The moving party bears the initial burden of showing that no genuine issue of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). The burden then shifts to the nonmoving party to show through specific evidence that a triable issue of fact remains on issues on which the nonmovant bears the burden of

proof at trial. *Id.* The nonmovant may not rest upon mere allegations in the pleadings or upon conclusory statements in affidavits; it must go beyond the pleadings and support its contentions with proper documentary evidence. *Id.* A genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). With these principles in mind, we now turn to the summary judgment motion before us.

## I. Fraudulent Misrepresentation

In order to be granted, Defendants' motion for summary judgment on its fraudulent misrepresentation claim must demonstrate an absence of evidence in the record to support a reasonable jury's finding that "(1) [HEC] intentionally made a false statement of a material fact; (2) [Eagle] had a right to rely on that false statement; (3) the statement was made for the purpose of inducing reliance thereon; (4) [Eagle] in fact relied on the statement; and (5) [Eagle] suffered injury as a direct result." *Trustees of AFTRA Health Fund v. Biondi*, 303 F.3d 765, 777 (7th Cir. 2002) (applying Illinois law and quoting *Rolando v. Pence*, 769 N.E.2d 1108, 1112-13 (Ill. 2002)). Eagle states the following alleged representations constitute fraudulent misrepresentation: (1) representations regarding the containment fill stations made in HEC sales literature; (2) specific representations in the Contract; (3) issuance of a test

certificate for one of the fill station lines without actually testing it; and (4) representing that two specific containment fill stations were capable of safely refilling SCUBA cylinders.

A. Sales Literature

HEC does not dispute that its sales literature contained false statements regarding the containment fill stations' capabilities. Rather, HEC maintains, in part, that it did not intend for Eagle to rely on the sales literature. There is no evidence in the record to support a finding of intent. The only evidence even relevant to this issue is the fact that Defendants provided Eagle with a copy of the sales literature shortly after initiating contact with Eagle regarding the sale of their business. (Pl. Stmt. of Facts ¶ 90.) In fact, Eagle admits that the sales literature was never discussed with any of the key Eagle representatives prior to executing the Contract (Def. Stmt. of Facts ¶ 40), nor does Eagle present any evidence that the sales literature was ever discussed with anyone else at Eagle.

B. Contractual Representations

Eagle claims that it was defrauded by four representations made in the Contract: Section 4.1(20)(a) and schedule 4.1(20) and sections 4.1(18) and 4.1(30).

Section 4.1(20)(a) and schedule 4.1(20), whether taken together or individually, are totally irrelevant to Eagle's fraud claims. Section 4.1(20)(a) of the Contract states:

> [HEC] has not given any guarantee or warranty in respect of any of the products sold or services provided as part of the Business [(being sold to Eagle)], except warranties and conditions made in the ordinary course of the Business and in the form of the standard written warranty and except for warranties implied by law.

(Contract § 4.1(20)(a).) Schedule 4.1(20) simply provides a copy of the standard warranty HEC gave its customers on all products sold in the ordinary course of its business. Eagle's reliance on section 4.1(20)(a) and schedule 4.1(20) of the Contract is incomprehensible. Those portions of the Contract will not be further considered with respect to the fraud claims.

Section 4.1(18) of the Contract states:

> [HEC] has no knowledge of any facts which could reasonably be expected to result in the loss of any customers or sources of revenue of the Business which, in the aggregate, would be material to the [assets, liabilities, operations, activities, earnings, prospects, affairs, or financial position] of the Business.

(Contract § 4.1(18).) Section 4.1(30) of the Contract states:

> No representation or warranty contained in this Agreement (including the Schedules attached hereto) or any other document executed and delivered by [HEC] in connection with this Agreement contains any untrue statement of a material fact, or omits to state any material fact which is necessary in order to make the statements contained therein not misleading.

(Contract § 4.1(30).) Eagle argues that these representations were false when made because HEC did not adequately test its containment fill stations, because some of the

testing actually indicated there were defects, and because none of the testing or omission of testing was disclosed to Eagle. Four months before the Contract was executed, HEC issued a test certificate for its Baron containment fill station although no test was ever performed.[1] (Pl. Stmt. of Facts ¶ 47.) Although HEC attempted to test the Cadet line of fill stations for its capability to contain SCUBA cylinder explosions at above normal pressures, it never actually did. (Pl. Stmt. of Facts ¶ 97.) HEC conducted a series of videotaped tests that indicated problems with the Cadet containment fill stations. (Pl. Stmt. of Facts ¶¶ 69-82.) None of this information was disclosed to Eagle prior to executing the Contract. A reasonable jury could find that HEC's representations in sections 4.1(18) (that it does not know of any material adverse facts) and 4.1(30) (that it did not omit any material facts so as to be misleading) defrauded Eagle into entering into the Contract.

C.  The So-Called False Test Certificate

As just mentioned, HEC issued a test certificate for its Baron product without ever testing it. That certificate, however, was never seen by Eagle until after the Contract was executed. For obvious reasons, a fraudulent misrepresentation claim

---

[1] HEC maintains that it innocently issued the test certificate because it thought the Baron had already been tested and the certificate had been lost, misplaced, etc. (Pl. Stmt. of Facts ¶¶ 44-50.)) HEC, however, has yet to offer evidence to support its contention that the testing actually did occur.

cannot be based on a representation that was not made until after the harm was sustained.

D.  The Modified Cadet Containment Fill Stations

Eagle alleges that it was defrauded by HEC's sale of at least two modified Cadet fill stations to a third party. Eagle states that HEC represented the modified Cadet fill stations as capable of safely refilling SCUBA cylinders. (Pl. Opp. at 8.) Eagle does not, however, allege, much less offer, any evidence in support, that HEC made the alleged representations to Eagle. In all likelihood, the representations would have been made only to the third party purchaser. We will not assume they were made to Eagle.

II.  **Fraudulent Concealment**

In order to be granted, HEC's motion for summary judgment on its fraudulent concealment claim must demonstrate an absence of evidence in the record to support a reasonable jury's finding of "(1) the concealment of a material fact; (2) that the concealment was intended to induce a false belief, under circumstances creating a duty to speak; (3) that the innocent party could not have discovered the truth through a reasonable inquiry or inspection, or was prevented from making a reasonable inquiry or inspection, and relied upon the silence as a representation that the fact did not exist; (4) that the concealed information was such that the injured party would have acted differently had he been aware of it; and (5) that reliance by the person from whom the

-12-

fact was concealed led to his injury." *Trustees of AFTRA Health Fund*, 303 F.3d at 777 (applying Illinois law and quoting *Schrager v. North Cmty. Bank*, 767 N.E.2d 376, 384 (Ill. 2002)). Thus, fraudulent concealment is like fraudulent misrepresentation except that the fraud is based on silence in the face of a duty to speak rather than an affirmative misrepresentation.

Eagle states that Defendants had a duty to speak with respect to the testing of the containment fill stations. Eagle believes this duty arose because Defendants' representations in the sales literature and in the Contract created a duty to speak regarding the circumstances of the testing. Although the sales literature was provided to Eagle, there is no evidence that it was ever discussed by the parties. Furthermore, contrary to Eagle's clear implication (*see* Pl. Opp. at 17), Defendants did not expressly acknowledge that Eagle was relying on the accuracy of the sales literature. As a matter of law, no duty to speak arose on account of the sales literature. The Contract representations, however, are a different story. In section 4.1(18), HEC represented that it had no knowledge of any material adverse facts, and in section 4.1(30), HEC represented that it did not make any misleading representations in the Contract by omitting material facts. Thus, HEC contractually obliged itself to speak up regarding any material adverse facts and any material facts needed to make other contractual

representations not misleading. A reasonable jury could find that this duty to speak extends to the facts and circumstances surrounding the testing of the products.

## CONCLUSION

Based on the foregoing analysis, we grant Defendants' motion to strike, grant in part and deny in part Plaintiff's motion to strike, and deny Defendants' motion for summary judgment.

_____
Charles P. Kocoras
Chief Judge
United States District Court

Dated: FEB 2 8 2003